FIVE STAR PARKING, a joint venture consisting of three business corporations: Charter Auto Parks, Inc., Grant Parking, Inc., L & R Auto Parks, Inc., Plaintiff,

v.

PHILADELPHIA PARKING AUTHORITY, Defendant,

and

Bank of America, Third Party Defendant.

Civ. A. No. 86–1005.

United States District Court, E.D. Pennsylvania.

Jan. 11, 1989.

Peter Hearn, James J. Ferrelli, Sharon R. Buckingham, Philadelphia, Pa., for plaintiff.

Charles W. Bowser, Luther L. Weaver, III, Kevin W. Gibson, Philadelphia, Pa., for Philadelphia Parking Authority.

Seymour I. Toll, Toll, Erby & Gough, Philadelphia, Pa., for Bank of America.

OPINION

GAWTHROP, District Judge.

Pending before this court is a motion for summary judgment filed on behalf of the third party defendant Bank of America (the Bank). This lawsuit concerns a license agreement, entered into between the Philadelphia Parking Authority (the Authority)

and Five Star Parking (Five Star), and a letter of credit issued by the Bank to secure Five Star's performance of that agreement. The only question presented here is whether the Bank was under a duty to give Five Star notice before allowing the Authority to draw upon the letter of credit. Upon the following reasoning, I conclude that the Bank was not under such a duty, and therefore the Bank's motion will be granted.

## Background

In August of 1982, Five Star, a California joint venture that operates parking concessions nationwide, applied at a California branch of the Bank for a letter of credit to be issued by the Bank in favor of the Authority as beneficiary. The motivation for the letter of credit was to obtain a form of standby bank assurance against possible non-performance by Five Star under a parking concession contract with the Authority. See *Five Star Parking v. Philadelphia Parking Authority*, 662 F.Supp. 1053 (E.D.Pa.1986).

On August 19, 1982, the Bank issued the letter of credit. Although the application and the letter of credit were amended several times, the only written precondition to the Bank's paying upon the letter of credit was its receipt from the Authority of a draft drawn upon the letter of credit, accompanied by the Authority's simple statement that Five Star had not performed in accordance with its obligations under the parking concession contract. The Authority contends, and Five Star concedes, that these materials comprise the letter of credit, and that the letter of credit contains no reference to any requirement of notice to Five Star.

In December, 1985, the Authority presented the Bank with a draft for $500,-000, accompanied by a statement that Five Star had not performed according to the terms of the parking contract. Upon receipt of these items, the Bank honored the draft.

Five Star sued the Authority, alleging, *inter alia*, that "the Authority's action in drawing down funds secured by the Letter of Credit without any reason or basis for so doing, without any prior notice to plaintiffs and without any adequate justification, constitutes a breach of its duty and obligations *under the License Agreement.*" Plaintiff's Second Amended Complaint, ¶ 34 (emphasis added).

The Authority filed a third-party complaint against the Bank, even though the reference to notice in Five Star's complaint appears to be nothing more than part of Five Star's general claim that the Authority breached the terms of the license agreement. For its part, Five Star has raised no claim that any party's conduct was in violation of the letter of credit undertaking; it has made no claim against the Bank for its conduct with regard to the letter of credit, nor has it defended against its obligation to repay the Bank for the $500,000 it advanced.

## Discussion

The Authority contends that if there was a duty to give Five Star notice, that duty rested with the Bank rather than with the Authority. I disagree.

The principles governing the duties of an issuer of a letter of credit are well settled by judicial decisions based upon the guiding provisions of Article 5 of the Uniform Commercial Code (UCC) as adopted in both California and Pennsylvania. 13 Pa.Cons. Stat.Ann. §§ 5101–17 (1984); Cal.Com.Code §§ 5101–17. Although the Bank contends that California law controls the issue at bar, I need not and thus do not reach the choice of law issue because the law in both states is the same. See *Sound of Market Street, Inc. v. Continental Bank International*, 819 F.2d 384, 387 (3rd Cir.1987) (declining to decide choice of law issue in letter of credit case because controlling precepts of relevant California and Pennsylvania law were the same).

Neither the UCC nor the letter of credit requires the bank to give its customer, Five Star, notice before allowing a beneficiary, the Authority, to draw upon a letter

of credit.[1] The only question before the court, therefore, is whether a notice requirement should be implied under established letter of credit principles.

■ Letters of credit are governed by two interrelated and fundamental tenets. The first is that a contract for a letter of credit is separate and independent from any contract or course of dealing between the customer and the beneficiary of the letter of credit. The second is that the issuer is charged only with reviewing specified documents submitted by the beneficiary, and must pay the beneficiary's draft upon the letter of credit if those documents conform to the requirements stated in the letter of credit itself.

■ For example, in *Lumbermans Acceptance Co. v. Security Pacific National Bank*, 86 Cal.App.3d 175, 150 Cal.Rptr. 69 (1979), the court affirmed the grant of summary judgment in favor of an issuing bank that had paid on a letter of credit, holding that the bank was entitled to recover the amount drawn from its customer because the bank had received the specified document which was, as here, a statement that the customer had not performed a certain obligation. Applying Cal.Com.Code §§ 5109 and 5114(1), the court held that it was enough that the statement appeared on its face to comply with the document requirement, regardless of the facts of the underlying contract. 86 Cal.App. at 178, 150 Cal.Rptr. at 71. *See also First Empire Bank v. Federal Deposit Insurance Corp.*, 572 F.2d 1361, 1366–67 (9th Cir. 1978).

The construction of these code provisions and of letter of credit law is the same in Pennsylvania:

> In the ordinary letter of credit transaction, there are at least three distinct agreements: the underlying contract between the customer and the beneficiary which gave rise to their resort to the letter of credit mechanism to arrange payment; the contract between the bank and its customer regarding the issuance of the letter of credit and reimbursement of the bank upon its honoring a demand for payment; and the letter of credit itself, obligating the bank to pay the beneficiary. *The issuing bank's obligation created by the letter of credit is totally independent of the other contracts.*

*Sound of Market Street*, 819 F.2d at 388 (emphasis added) (quoting *Insurance Co. of North America v. Heritage Bank, N.A.*, 595 F.2d 171, 173 (3d Cir.1979)). The court observed that to require advising banks to provide timely transmission and notification of letters of credit to beneficiaries would create undesirable uncertainty "in an area where certainty is of the utmost importance," noting further that the customer and beneficiary maintain their rights of suit against one another to correct any breaches of contract. *Id.* at 394. Although here the Bank is an issuing bank rather than an advising bank, the policies of certainty and separateness endorsed by the court in *Sound of Market Street* call for a similar result in this case: the scope of the Bank's obligations is governed solely by the straightforward rules provided by statute and the written terms of the letter of credit itself. *See also Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (1975) (under well-established Pennsylvania law, unless the parties otherwise agree, the issuer deals only in documents and is not even permitted to go behind the documents to determine if the beneficiary has performed in conformity with the underlying contract).

### Conclusion

The Bank is under no duty, implied or otherwise, to see that the customer is notified of an impending draw before paying on a letter of credit; its duty is simply to

---

**1.** The letter of credit does state that it is subject to the Uniform Customs and Practice for Documentary Credits ("UCP"), but the UCP, like the UCC, contains no notice requirement. In any case, both California and Pennsylvania courts appear to hold that judicial decisions and Article 5 of the Uniform Commercial Code, and not the UCP, provide the substantive law with re- of credit. *Sound of Market Street*, 819 F.2d at 388 (Pennsylvania); *Pubali Bank v. City National Bank*, 777 F.2d 1340, 1343 (9th Cir.1985) (California).

honor the draft or payment when the beneficiary submits it with all required documents. Cal.Com.Code § 5114; 13 Pa. Cons.Stat.Ann. § 5114; *Sound of Market Street, Inc. v. Continental Bank International,* 819 F.2d 384 (3d Cir.1987). Summary judgment on all counts of the third party complaint will therefore be entered for the Bank of America.